IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2019 Session

**STATE OF TENNESSEE v. DENNIS FREENY**

**Appeal from the Criminal Court for Knox County**
**Nos. 90124, 90783   Steven Wayne Sword, Judge**

_____

**No. E2019-00207-CCA-R3-CD**
_____

Dennis Freeny, Defendant, claims that the trial court abused its discretion in revoking his probation and ordering him to serve the balance of his sentences in the Tennessee Department of Correction (TDOC).  Discerning no error, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JJ., joined.

Forrest L. Wallace, Knoxville, Tennessee, for the appellant, Dennis Freeny.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural History*

On August 10, 2009, Defendant pleaded guilty in Case No. 90214 to attempted possession with intent to sell a Schedule II controlled substance [cocaine] and resisting arrest.  Pursuant to the plea agreement, the trial court sentenced Defendant as a Range I Standard Offender to a total effective sentence of four years to be served one year in split confinement and the remainder of the sentence on probation.  On the same day, Defendant pleaded guilty in Case No. 90783 to attempted second degree murder and unlawful possession of a weapon.  Pursuant to the plea agreement, the trial court sentenced Defendant as a Range I Standard Offender to an effective term of ten years to be served one year in split confinement and the remainder of the sentence on probation.

The court ordered the sentences in the two cases to be served consecutively for total effective sentence of fourteen years.

On January 6, 2012, a probation violation warrant was issued averring that Defendant had been charged on November 29, 2011, with criminal trespassing, that he had failed to report the charge to his probation officer, and that he had not made a payment toward fines and court costs. On March 6, 2012, Defendant admitted to the violation. The trial court revoked Defendant's probation in Case No. 90214 and Case No. 90783 but reinstated Defendant and placed him on enhanced probation, which was set to expire on July 22, 2025.

On September 14, 2012, a probation violation warrant was issued averring that Defendant had been charged with driving on a suspended license, had failed to notify his probation officer of the charge, had failed to maintain employment, had failed to reside at an appropriate address and abide by his curfew, had failed to report as required, and had failed to pay fines and court costs as required. On December 7, 2012, Defendant admitted to the violation, and the trial court fully revoked Defendant's probation and ordered Defendant to serve the remainder of his sentences in TDOC.

On July 23, 2015, Defendant was released from TDOC after successfully completing the Technical Violator Program. On August 3, 2018, a probation violation warrant was issued averring that Defendant had failed to provide proof that he was seeking employment and had tested positive for cocaine. While incarcerated on this violation warrant, Defendant was accepted into Steps House, a halfway house and treatment program. The trial court ordered his release under the supervision of enhanced probation to Steps House on October 17, 2018.

On October 24, 2018, Defendant was discharged from Steps House program for noncompliance with program rules, and on October 25, 2018, an amended probation violation warrant was issued based on Defendant's discharge from the program.

### *December 7, 2018 Probation Revocation Hearing*

Jonathan Stilwell, a case manager at Steps House, testified that he was not Defendant's case manager but that he had several conversations with Defendant. He stated that Defendant was adamant that he did not have an addiction problem to either drugs or alcohol and blamed his previous positive drug screens on inhalation of fumes, not personal use. On October 24, 2018, Mr. Stilwell gave Defendant permission to leave Steps House so that he could look for employment. Mr. Stilwell said Defendant did not have permission to do anything while outside the facility other than search for employment and that he was required to return to Steps House by 4 p.m. He said

Defendant returned sometime between 4 and 5 p.m. and that, upon his return, Mr. Stilwell and other program staff called Defendant to the main office and questioned him about where he had been during the day. Defendant claimed that he went to the McDonald's on Western Avenue, filled out some online applications, and then spent the day with his family. Following this meeting, Mr. Stilwell and Steps House staff determined that Defendant's adamant denial of his addiction and his noncompliance with program rules required Steps House to discharge Defendant.

On cross-examination, Mr. Stilwell agreed that Defendant passed all drug screens while in Steps House.

Defendant testified that he told the staff at Steps House that he had drug addiction but did not have an alcohol addiction. He claimed that the program at Steps House was solely for treatment of alcohol addiction. Defendant stated that he went to the Western Avenue McDonald's but was unable to fill out a paper application. He used his cousin's cell phone to fill out an online application for McDonald's and several other fast food restaurants. Defendant admitted that he visited with his child and her mother when he was filling out job applications. Defendant left McDonald's between 11 a.m. and 12 p.m. and went to lunch with his cousin and his cousin's girlfriend. After lunch, Defendant and his cousin took another of Defendant's cousins to basketball practice.

Defendant testified that he informed his probation officer of his discharge from Steps House and was told that discharge from a halfway house while on enhanced probation was a zero-tolerance violation. Defendant introduced a November 22, 2018, letter from the manager of the Western Avenue McDonald's stating that Defendant was "eligible for employment at my McDonald's location" and may begin part time employment as soon as November 25, 2018. The letter was not provided to the staff at Steps House until well after Defendant's discharge from the program.

Enhanced Probation Officer Elizabeth Cady testified that she was advised that the Defendant was admitted into Steps House. She stated that being discharged from a halfway house while on enhanced probation was a "zero tolerance violation," so she sought a probation violation warrant based on Defendant's discharge. Ms. Cady testified that Defendant "had a major issue admitting that he had [] a substance abuse problem," so she was not surprised when she received "a call from Steps [House] saying that [Defendant] was denying substance abuse issues." Based on Defendant's denial of a substance abuse problem, Ms. Cady stated that she did not "think that he would qualify for [e]nhanced [p]robation."

Near the conclusion of the hearing, Defendant asked the trial court to delay its ruling until the court received a report from TDOC's Day Reporting Center (DRC) as to whether Defendant would be a favorable candidate for that program.

In granting that request, the trial court orally summarized the history of the case, stating:

So[,] the history of [Defendant]'s case [] is he was out on bond on the felony drug case, shot somebody in the back five times. . . . But in any event, you can't shoot somebody in the back, and I'm sure this was drug related from the beginning[;] that [Defendant] was involved in stuff he shouldn't have been involved in at that point in his life. Ends up pleading to attempted second-degree murder. Took two split-confinement one years on those consecutive cases which total effective sentence of 14 years. Did that time. Was released. Came out. The first violation was a criminal trespass, and he was revoked. That was in 2012. Was revoked.

Given another shot and placed on [e]nhanced probation on March 6, 2012. Six months later the second violation comes in. He's violated for driving on suspended license, not reporting as instructed, curfew, and some other technical violations, and I revoked him, sent him to the penitentiary on November 30[], 2012.

So[,] I'm not sure how he comes out on a technical violator status when he's revoked for a criminal offense, driving on suspended license. In any event, that's up to TDOC to do that.

He spends almost three years in prison. Comes out on July 23rd, 2015. Released by TDOC. His expiration date was extended out to August of 2024, and then he does probation until the third violation gets filed on August 3rd for repeated dirty drug screens for cocaine and missing some appointments with his probation officers, some other technical violations. The [c]ourt held him until August--October 17. That was a sanction that I was doing to give him another shot. Released him back, and I think Mr. Morton is right. I think I did say this is your last chance. And then a week later we got the amended VOP for being discharged from Steps.

So[,] you know, you look at this on paper, you know I've already revoked him before and sent him to the penitentiary. They decided to send him out, and he's using cocaine, he's not following the rules as he's supposed to do. I have no idea why I wouldn't revoke him. But if I was a

- 4 -

prosecutor, I'd be really frustrated with me as a judge because I don't seem to ever be able to pull the trigger, but I take it very serious when I'm deciding on whether or not to send somebody to the penitentiary.

You have certainly earned a revocation in this case, [Defendant], but I'm gonna let you talk to DRC. I'm not making any promises. They may say they'll work with you and I may still revoke you. They may say they won't work with you and I still may give you a shot at it. I don't know. I need to spend some time thinking about this. But the two big concerns I have is you spent half of the time that you have been placed on probation in jail on this thing, either in TDOC or in violation status, and the original offense was a violent offense. And so I'm very concerned, and I think what this is, the discharge thing from Steps is, is you just kinda trying to skirt the rules a little bit, get away with what you want to get away with, and that scares me, and so I'm gonna let you talk to DRC. We'll see what they have to say, and then eventually I'll make up my mind on this thing.

The court agreed to reserve judgment on the probation violation until it received the DRC report.

### January 18, 2019 Hearing

On January 11, 2019, DRC issued its report recommending that Defendant not be accepted to the Center. After receipt of the DRC report, the trial court conducted a second probation revocation hearing. The court noted that the DRC report concluded that Defendant was not a good candidate for the program because he was not forthcoming about his criminal history or his substance abuse problems. The trial court issued a written order fully revoking Defendant's probation. After the trial court denied Defendant's motion to reconsider in which he claimed that the DRC report erroneously stated his criminal history, Defendant timely filed a notice of appeal on February 1, 2019.

### Analysis

Defendant argues on appeal that the trial court erred in revoking his probation and ordering him to serve the balance of his original sentence in incarceration. The State responds that the trial court acted within its discretion to order him to serve his original sentence. We agree with the State.

Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation and order the imposition of the original sentence. T.C.A. §§ 40-35-310, -311; *State v. Kendrick*, 178

S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id*. If the record clearly shows that "the trial judge exercised conscientious judgment in making the decision rather than acting arbitrarily[,]" there is no abuse of discretion. *State v. Leach*, 914 S.W.2d 104, 107 (Tenn. Crim. App. 1995).

Once a trial court has determined that a violation of probation has occurred, the court has the discretionary authority to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), -308(c), -310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). The determination of the proper consequences of the probation violation embodies a separate exercise of discretion. *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Defendant was initially placed on probation after serving a period of split-confinement. Defendant admitted to multiple violations of probation. He admitted to his first violation of probation after receiving a new criminal charge of criminal trespassing, failing to report the charge to his probation officer, and failing to make any payment toward his fines and court costs. His probation was revoked, but he was immediately transferred to enhanced probation. Defendant next admitted to violating the terms of enhanced probation after being charged with driving on a suspended license, failing to notify his officer of the charge, failing to maintain employment, failing to reside at an appropriate address and abide by his curfew, failing to report as required, and failing to pay his fines and court costs. The trial court fully revoked Defendant's probation and ordered Defendant to serve the remainder of his sentences. After successfully completing the Technical Violator Program, Defendant was released from TDOC and reinstated to enhanced probation. A third probation violation warrant was issued averring that Defendant had failed to provide proof he was seeking employment and had tested positive for cocaine. Before a hearing on this violation, Defendant was released from incarceration to enroll in a program at Steps House. After being discharged from Steps House for violating the program rules, a fourth probation violation warrant was issued. At the revocation hearing, Defendant requested that the court delay judgment until the trial court received a report from TDOC's DRC on whether he would be a favorable

candidate for that program.  The trial court granted this request.  After the DRC issued its report recommending that Defendant not be accepted, the trial court ordered Defendant to serve the remainder of his sentence.

The trial court gave Defendant abundant opportunities to succeed on probation. Defendant admitted to repeated violations of probation.  The court acted well within its discretionary authority in revoking Defendant's probation and in ordering Defendant serve the balance of his sentence in confinement.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking Defendant's probation and ordering the balance of his sentence to be served in the TDOC.

_____
THOMAS T. WOODALL, JUDGE